IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CEE BEE PRODUCE, INC., | : |
| Plaintiff, | : |
| GENERAL PRODUCE, INC., | : |
| Intervening Plaintiff, | : 5:06−CV−181 (WDO) |
| v. | : |
| LAWANDA TUCKER, et al., | : |
| Defendants | : |

**ORDER**

Plaintiff General Produce intervened in this case to assert an interest as a federal statutory trust beneficiary pursuant to the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499(a)−499(o) (the "PACA"), to recover payment for produce sold to Defendants. During the course of this litigation, the case was stayed so that the defendants' bankruptcy case could proceed. After the bankruptcy case concluded, this case was reopened. The matter is now before the Court on Plaintiff General Produce's motion for summary judgment, to which Defendants have filed no response. All of the following facts, with the exception of those dealing with the interest and attorney's fees owed, were established in the Bankruptcy Court for the Middle District of Georgia, by The Honorable James D. Walker, Jr., in case number 06−50092−JDW, Adversarial Proceeding No.: 06−5107, styled, <u>In Re:</u>

1

Lawanda Young Tucker.

***Factual and Procedural Background***

Plaintiff General Produce, Inc. is a seller of wholesale produce. Between January 22, 2006 and June 7, 2006, General sold $76,333.80 worth of fresh fruits and vegetables to Defendant Stokes-Shaheen Produce, Inc. ("Stokes") pursuant to an open account and credit agreement. Stokes has failed to pay for said produce. Lawanda Young Tucker ("Tucker") was the president, majority shareholder, and manager of Stokes at the time these sales occurred. Tucker managed the company in all of its aspects, including supervising purchases, sales, bank deposits, and deciding who the company paid, and did not pay. Tucker either signed checks herself, or directly supervised the bookkeeper who made payments. Cash payments were either made by Tucker, or by an employee directly supervised by her.

During the Summer of 2005, Tucker met with her attorney. The topic of the attorney research, and her consultations, involved the legal effect of defaulting on debts covered by the PACA. The accounts payable records indicate that Stokes could not, and did not, pay PACA liabilities through 2005 and the first part of 2006. At the time Stokes made the orders from General, it was, practically speaking, insolvent.

Stokes is now bankrupt, and its assets have been liquidated. This resulted in a distribution, on or about May 2, 2007, of

2

$7,771.45, toward Stokes' PACA trust obligation to General. This leaves a principal balance due to Plaintiff General Produce of $68,562.35. Each of General Produce, Inc.'s invoices to Stokes contains the following language, "All past due invoices will incur interest charges of 1.5% per month. Customer must pay the attorney's fees and costs incurred in collection of all past due invoices. Interest and attorney's fees are sums owed in connection with this transaction."

Between July 8, 2006 (which beginning date, for purposes of calculating interest, is beyond the 30th day after the final unpaid invoice became due) through July 24, 2007, $15,076.35 in interest has accrued and is due and owing on this account. Interest continues to accrue on this account balance at the rate of $33.81 per day from July 24, 2007.

### *Summary Judgment Standard*

Summary Judgment is appropriate when the pleadings, depositions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Supreme Court has explained that the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

> A party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23.

### *PACA Liability*

"PACA regulates the sale of perishable agricultural commodities to protect produce sellers from unscrupulous or insolvent dealers, brokers, and commission merchants. The Act requires licensing of all entities qualifying as commission merchants, dealers, and brokers in perishable agricultural commodities, and provides for various remedies that may be enforced either through a complaint filed with the Secretary of Agriculture, or through an action in any court of competent jurisdiction." Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 631 (11th Cir. 2004) (citation omitted). "The Act also provides that in interstate transactions involving agricultural commodities, those commodities or their proceeds 'shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers,

4

sellers, or agents.'" Id. at 632 (citing 7 U.S.C. § 499e(c)(2)). "This creates a 'non-segregated floating trust,' which gives produce suppliers priority over banks or other creditors who may have perfected security interests in the inventory and receivables of an insolvent produce dealer." Id. (citing 7 C.F.R. § 46.46)(other citation omitted). An individual who is in the position to control PACA trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. Morris Okun v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993). A PACA trust imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. Id. (citation omitted).

In the case at bar, the Bankruptcy Court found the existence of a PACA trust, found that Lawanda Tucker was the trustee, or "person in control" of the PACA trust, found that Tucker defalcated within the meaning of the law on her trust duties, found that Tucker is therefore personally liable to the Plaintiff in the amount of the Stokes PACA trust for her failures as trustee, and found that her liability for said defalcation was non-discharegable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4). The only remaining issue is the amount of damages.

Attorney's fees and interest are recoverable as a part of the

PACA trust. Country Best, 361 F.3d at 632. Full payment of the sums owing in connection with commodities transactions unambiguously encompasses not only the price of commodities but also additional related expenses. "Such related expenses include attorney fees and interest that buyers and sellers have bargained for in their contracts." Id. at 632. Further, pursuant to O.C.G.A. § 13-1-11 attorney's fees are appropriate when (1) the evidence of indebtedness provides for attorney fees and (2) a demand letter is sent informing the debtor that a failure to satisfy the account will render the debtor liable for attorney's fees. "Once these preconditions are established, a contractual provision to pay attorney fees in connection with a creditor's efforts to collect "shall be valid and enforceable." Kroger Co. v. U.S. Foodservice of Atlanta, Inc., 270 Ga. App. 525, 530 (2004). Pursuant to O.C.G.A. § 7-4-16, "the owner of a commercial account may also charge interest on that portion of a commercial account which has been due and payable for 30 days or more at a rate not in excess of 1 ½ percent per month calculated on the amount owed from the date upon which it became due and payable until paid." Finally, prejudgment interest is also a proper element of damages for an unpaid commercial account. Kroger Co. v. U.S. Foodservice of Atlanta, Inc., 270 Ga. App. 525 (2004).

Defendant Tucker admitted, in her deposition, the amount due, and the Bankruptcy Court made a finding consistent with her

admission: $76,333.80. On or about May 2, 2007, a $7,771.45, distribution was made to Plaintiff from the bankruptcy estate, leaving a principal balance due of $68,562.35. Plaintiff's invoices contained the contractual language required by the statute and case law cited above: "All past due invoices will incur interest charges of 1.5% per month. Customer must pay the attorney's fees and costs incurred in collection of all past due invoices. Interest and attorney's fees are sums owed in connection with this transaction." Between July 8, 2006 (thirty days beyond the final invoice due date of June 7, 2006) through July 24, 2007, $15,076.35 in interest has accrued and is due and owing on this account. Interest continues to accrue on this account balance at the rate of $33.81 per day from July 24, 2007. Plaintiff sent a letter, certified mail, on March 16, 2006, demanding payment lest the matter be referred for collection and "attorney's fees and other costs involved in the collection of this account" would be sought. Pursuant to O.C.G.A. § 13-1-11(a)(2), the Plaintiff is entitled to 15% of the first $500 owed, and 10% of the remaining balance. Currently, including interest, $83,638.70 is owed. Fifteen percent of the first $500.00 is $75.00. Ten percent of the remaining $83,138.70 is $8,313.87. Plaintiff therefore seeks a total of $8,388.87 in attorney's fees.

Based on the foregoing, the Court hereby grants summary judgment in favor of Plaintiff General Produce and against Lawanda

Tucker in the principal amount of $68,562.35, plus attorney's fees in the amount of $8,388.87, plus interest in the amount of $15,076.35 through July 24, 2007 (plus $33.81 per day from July 24, 2007 through the date of the Judgment); plus post-judgment interest at the legal rate.

**SO ORDERED this 12th day of September, 2007.**

**S/Clay D. Land**
**CLAY D. LAND**
**UNITED STATES DISTRICT JUDGE**